**Zelda E. VAUGHN, Appellant,**

v.

**TEXAS EMPLOYMENT COMMISSION, Gulf Publishing Company, Kathy Coffman, and Clayton Umbach, Appellees.**

No. 01–89–00836–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 26, 1990.

Rehearing Overruled June 7, 1990.

Ben Levy, Houston, for appellant.

L. Boyd Smith, J. Alfred Southerland, Vinson & Elkins, Houston, for appellees.

Before EVANS, C.J., and MIRABAL and DUGGAN, JJ.

DUGGAN, Justice.

This is an appeal from an order dismissing appellant's causes of action against appellees with prejudice and awarding attorney's fees to the defendants as sanctions for discovery abuse.

The plaintiff-appellant does not challenge the trial court's findings that she committed perjury and fabricated evidence in her deposition and discovery responses, and that she committed perjury during the hearing on appellees' motion for sanctions.

Without disputing the trial court's finding of her misconduct, appellant complains that under the worst-case scenario, the "harsh and punitive" remedies imposed were excessive and constituted an abuse of the court's discretion. She particularly complains of the trial court's action on its own motion, after hearing the testimony at the sanctions hearing, in reconsolidating and dismissing her previously severed cause of action against one of the appellees; she asserts this appellee was not affected by any perjury and fabrication of evidence.

Appellant, Zelda E. Vaughn, was employed by appellee, Gulf Publishing Company, under the supervision of appellees, Kathy Coffman and Clayton Umbach, until November 1985. She thereafter applied for unemployment benefits, which appellee, Texas Employment Commission ("TEC"), denied. In September 1986, Vaughn filed suit against Gulf Publishing, Coffman, Umbach, and TEC, alleging wrongful termination, defamation, and wrongful denial of unemployment benefits. Because her claim against TEC for wrongful denial of unemployment benefits involved a different standard of proof from that governing her claims against Gulf Publishing, Coffman, and Umbach, the trial court granted appellees' motion to sever these claims less than a month before the trial setting.

Vaughn's case against Gulf Publishing, Coffman, and Umbach had proceeded through pretrial discovery on theories of wrongful termination and defamation. In October 1987, appellees sent discovery requests to Vaughn, specifically requesting information supporting her cause of action for defamation. As part of her sworn response, Vaughn produced a list of more than 160 business entities to which she purportedly had applied for and been denied employment. She also produced several handwritten documents she claimed were transcriptions of telephone conversations between prospective employers and Coffman, her former supervisor at Gulf Publishing.

During Vaughn's deposition, taken June 10, 1988, she swore that she prepared the

transcripts from tape-recorded conversations between prospective employers and Coffman. She further swore that she was not present when the conversations took place and that she had merely asked each of these prospective employers to call Coffman to obtain a reference, and to record their conversations in order to help Vaughn determine why she was having difficulty getting a job. She testified that each transcript contained false statements made by Coffman which (1) prevented her employment by the persons making the recordings, and (2) were illustrative of the slanderous comments Coffman made to the other 160 or so prospective employers who had denied her employment.

One of the transcripts referenced in Vaughn's deposition reflects a conversation between a Jean Cox and Coffman on August 27, 1987. The transcript indicates that Cox worked at an insurance agency where Vaughn applied for employment, and that Cox called Coffman to check references on Vaughn. During Vaughn's deposition, she swore that Cox was a supervisor at the insurance agency; that Cox had authority to make recommendations concerning employment of job applicants; that she explained to Cox she was having trouble getting a job, and asked Cox to record her conversation with Coffman; that Cox agreed to make the recording and in fact did so; and that she, Vaughn, was not present when the recording was made.

In July 1988, Vaughn spent two days at the court reporter's office reviewing her deposition and made over 35 corrections to the transcript, including grammatical changes and narrative explanations of her testimony. However, none of Vaughn's corrections attempted to clarify, delete, or alter any of the references to the purported August 27, 1987, telephone conversation between Coffman and Cox.

On May 11, 1989, appellees' attorneys learned of the fabricated evidence and confronted Vaughn's attorney with this information. On May 12, 1989, Vaughn filed an amended petition which de-emphasized her defamation claim. On May 15, 1989, appellees moved to dismiss the case pursuant to Texas Rules of Civil Procedure 13, 215(2)(b), and 215(3).[1] A hearing was set for May 17, 1989, and reset until May 22, 1989, the day the case was called for trial. On May 17, 1989, the original motion hearing date, Vaughn filed a written response entitled "Plaintiff's Retractions and Corrections of Deposition Testimony." By this pleading, she attempted to retract her statements regarding the telephone conversation between "Cox" and Coffman by altering or deleting 27 portions of her deposition dealing with the transcript.

During the hearing on May 22, 1989, appellees called Vaughn as a witness. She testified that part of the basis of her claim against appellees was that she could not get a job because of bad things Coffman had said about her. When she was confronted with the transcript of the purported telephone conversation between Cox and Coffman, Vaughn conceded that (1) she had never approached Cox to ask her to call Coffman, and (2) the transcript actually reflected a conversation between Coffman and Vaughn personally. She admitted that her initial production of the transcript was made in response to appellees' specific interrogatory asking her to identify every false and malicious statement or bad recommendation made by appellees. However, she refused to acknowledge that she had lied about the transcript during her deposition and repeatedly insisted that she had used Cox's name "inadvertently."

After Vaughn's testimony, appellees called Arvy Jean Cox as a witness. Cox testified that she knew Vaughn casually through church, but had never discussed

---

**1.** On the eve of trial, appellees' attorney called the insurance agency and inquired about Jean Cox. Management stated they had an employee named Arvy Cox whose middle name was Jean. At a meeting with Arvy Cox on Friday, May 12, 1989, appellees' attorneys learned that Vaughn had lied about Cox's involvement in the telephone conversation and that Vaughn's testimony about that conversation, including the nature and origin of the transcript, was a total fabrication. In reality, Vaughn herself had made the call to Coffman and had falsely identified herself as Cox.

with Vaughn her application for a job at the insurance agency. Cox stated that Vaughn never asked her to phone Coffman at Gulf Publishing, and emphatically denied making the phone call referenced in the fabricated transcript.

Cox went on to recount that Vaughn telephoned her on May 11, 1989, and told her that she, Vaughn, had done something wrong and had used Cox's name without permission, and that she was having to "work undercover." She warned Cox that she might get a call from some attorneys, and instructed her to "tell them something but tell them nothing." During a later telephone call, Cox told Vaughn that she would not lie for her.

Based upon the evidence presented at the hearing, the trial court on its own motion reconsolidated Vaughn's suit against TEC with her suit against Gulf Publishing and the individual defendants, and granted appellees' motion to dismiss. The trial court specifically found that Vaughn lied both in her discovery and deposition responses, in violation of Texas Rule of Civil Procedure 215, and also during the evidentiary hearing when she testified that her misrepresentations were "inadvertent." Vaughn filed motions to recuse the judge and for new trial, both of which were overruled; this appeal follows.

In her sole point of error, Vaughn asserts that the trial court "blatantly" abused its discretion in its order of dismissal and imposition of sanctions. The order:

(1) reconsolidated her severed cause of action for unemployment compensation against TEC and Gulf Publishing with this cause;

(2) struck all of her plaintiff's pleadings against all parties;

(3) dismissed all of her claims against all defendants;

(4) imposed as sanctions a fine of $10,-000, of which $7,500.00 was awarded as attorneys' fees to Vinson & Elkins, and $2,500.00 as attorneys' fees to TEC; and

(5) referred the case to the district attorney's office for criminal prosecution.

Texas Rule of Civil Procedure 215(2)(b) provides:

If a party ... fails to comply with proper discovery requests ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

. . . .

(5) An order ... dismissing with or without prejudice the action or proceedings or any part thereof. . . .

. . . .

(8) In lieu of ... or in addition thereto, the court shall require the party failing to obey the order ... to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Similarly, rule 215(3) provides:

If the court finds a party is abusing the discovery process in seeking, making or resisting discovery ... then the court ... may impose any sanction authorized by paragraphs ... (5) ... and (8) of paragraph 2b of this rule. Such order of sanction shall be subject to review on appeal from the final judgment.

■ The purpose of discovery sanctions is threefold: (1) to secure the parties' compliance with the rules of discovery; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the rules of discovery. *McRae v. Guinn Flying Serv.*, 778 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1989, no writ). A trial court has broad discretion to impose sanctions, including dismissal with prejudice, on a party who abuses the discovery process. *Id.; Carr v. Harris County*, 745 S.W.2d 531, 532 (Tex.App.—Houston [1st Dist.] 1988, no writ); *see also Gonzales v. Conoco, Inc.*, 722 S.W.2d 247, 249 (Tex.App.—San Antonio 1986, no writ).

■ In reviewing a sanction entered for discovery abuse, an appellate court cannot substitute its judgment for that of a trial court unless it finds that the trial court abused its discretion as a matter of law. *McRae*, 778 S.W.2d at 191; *Ray v. Beene*,

721 S.W.2d 876, 879 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). In determining whether a trial court has abused its discretion, we are required to view the evidence in the light most favorable to the trial court's action, and to indulge every legal presumption in favor of the judgment. *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). To establish a clear abuse of discretion, appellant must show that the trial court's action was arbitrary or unreasonable, given all the circumstances of the particular case. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984); *McRae*, 778 S.W.2d at 191; *Evans v. State Farm Mut. Auto. Ins. Co.*, 685 S.W.2d 765, 768 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).[2] A trial court abuses its discretion if the sanction imposed does not further one of the intended purposes of sanctions. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986).

Our review of the evidence presented at the motion to dismiss hearing shows that, at her deposition on June 10, 1988, Vaughn produced a tape recording and transcripts of three telephone conversations purportedly between prospective employers and representatives of Gulf Publishing. She swore in her deposition that she prepared the transcripts directly from the tapes, that one of the transcripts reflected a conversation between Coffman and Jean Cox, and that the allegedly slanderous statements contained in the transcripts were illustrative of the comments Coffman had made to the over 160 prospective employers she claimed had denied her employment.

In an attempt to avoid the finding of perjury and the sanction of dismissal, Vaughn amended her petition to de-emphasize the defamation claim on May 12, 1989, the day after appellee's counsel confronted her attorney with the evidence of perjury. At the hearing on the motion to dismiss, Vaughn unsuccessfully sought to obfuscate the purposes and implications of her actions. First, she claimed that she had "inadvertently" used Cox's name without her permission. Second, she asserted that the statements were neither lies nor material to her lawsuit as now pleaded. The trial court obviously—and reasonably—concluded that Vaughn made these statements with the intent to deceive appellees.

Although Vaughn tried to excuse her deposition testimony through retraction of portions of her deposition, the trial court could reasonably have believed that these changes would not have been made if appellees' counsel had not discovered her fabrication. Significantly, her retraction instrument was not filed until after appellees filed their motion to dismiss, within one week of the scheduled trial date, and 10 months after Vaughn spent two days reviewing and "correcting" the transcript of her deposition.

Vaughn urges that the sanctions imposed are an abuse of discretion because any false statements she made pertained to only one of her causes of action, her now-abandoned defamation claim, and are not material to her claims for wrongful discharge and denial of unemployment benefits.[3] She is factually incorrect in the

---

**2.** Vaughn's brief cites a number of cases for the proposition that a trial court abuses its discretion when it reaches a decision "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). None of these cases support her argument that the actions of the district court in dismissing a plaintiff's suit—after it finds perjury by the plaintiff—amount to an abuse of discretion. Further, many of these cases were decided prior to the amendments to the Texas Rules of Civil Procedure, which "substantially rewrote the rules on discovery and sanctions for abuse of discovery, implementing harsh sanctions as a means to punish those who abuse

discovery to discourage such practices." *Skinner v. Grimes Iron & Metal*, 766 S.W.2d 550, 551 (Tex.App.—Fort Worth 1989, no writ).

**3.** Vaughn also argues that the trial court's sanctions were unreasonable and an abuse of discretion because her false statements were not "material," as that term is defined in the Texas Penal Code, which proscribes "Perjury and Other Falsifications." Section 37.04(a) provides that a statement is "material," if it could have affected the course or outcome of the official proceeding. Tex.Penal Code Ann. § 37.04(a) (Vernon 1989). While a showing of materiality is a necessary element of the third degree felony offense of *aggravated* perjury under Tex.Penal

premise of her argument, viz., that the defamation cause of action, which she pleaded in her first two petitions, is now dropped. Her second amended petition continues to support submission of a defamation issue.

■ Even if Vaughn's wrongful discovery responses were to become immaterial because of pleading amendments or evidentiary rulings, they are sanctionable because they offended the discovery process at the time they were made. A discovery wrongdoer does not have an absolute right, if his or her offense is detected, to avoid dismissal as a sanction by simply amending pleadings to render tainted evidence no longer material. Such an option in the offender's hands would render useless, or at least strongly dilute, the trial court's power to enforce the threefold purpose of discovery sanctions. *McRae*, 778 S.W.2d at 191.

■ Vaughn's courtroom perjury, committed *after* her attempted retraction of her deposition testimony and *after* her pleading amendment to de-emphasize her defamation claims, was a continuation of her earlier perjury. Thus, the trial court acted reasonably in reconsolidating on its own motion Vaughn's action against TEC for the related denial of unemployment benefits, and in dismissing that action along with Vaughn's wrongful discharge claim.

■ Appellant also complains that the trial court abused its discretion in imposing a $10,000 fine upon her, and in disbursing it as an award of attorney's fees, $7,500 to Gulf Publishing and the individual appellees' attorneys, and $2,500 to TEC. Because rules 215(2)(b)(8) and 215(3) authorize the trial court to order the payment of reasonable expenses, including attorneys

fees, for abuse of the discovery process, we next consider whether the award here imposed was reasonable.

While Vaughn's tainted evidence had the ultimate goal of obtaining a falsely exaggerated settlement or judgment at trial, the immediate result of her fabrication and perjury during discovery was to increase the appellees' costs of defense by compelling them to incur further investigative expense. One of the appellees' attorneys stated in argument at the motion to dismiss hearing that over $10,000 in attorneys' fees had been incurred. The unsworn attorney's statement does not constitute evidence which supports the award of attorney's fees; however, the award does not turn on that state of the evidence. *Bloom v. Bloom*, 767 S.W.2d 463, 471 (Tex.App.—San Antonio 1989, writ denied). We presume that the trial court, as authorized by TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986), took judicial notice of the usual and customary attorney's fees, as well as the contents of the case file, in making its award to appellees' attorneys; nothing in the record rebuts that presumption, and no further evidence was required to establish reasonableness of attorney's fees. *Bethel v. Norman*, 756 S.W.2d 6, 9 (Tex.App.—Houston [1st Dist.] 1988, no writ).

The evidence establishes that the trial court did not abuse its discretion in dismissing Vaughn's causes of action and imposing the sanctions it levied.

The judgment of the trial court is affirmed.

CODE ANN. § 37.03 (Vernon 1989), materiality is not an element of the Class A misdemeanor offense of perjury under TEX.PENAL CODE ANN. § 37.02 (Vernon 1989). Section 37.02 requires, for the commission of the offense, only (1) that a person make "a false statement under oath or swears to the truth of a false statement previously made," and (2) that "the statement is required or authorized by law to be made under oath." TEX.PENAL CODE ANN. § 37.02 (Vernon

1989). Thus, Vaughn could have been found guilty of the misdemeanor offense of perjury whether or not her false statements were "material" to some issue in the trial of her case. *See* Searcy & Patterson, *Practice Commentary*, TEX. PENAL CODE ANN. § 37.04 (Vernon 1989). In any event, there is no requirement that a person be guilty of a crime under the Texas Penal Code in order for a trial court to assess sanctions for presenting false evidence under rule 215.