Reba DANIEL, Appellant,

v.

**KELLEY OIL CORPORATION and David Kelley, Individually, Appellees.**

No. 01–96–00461–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 7, 1998.

Michael O'Brien, Peter R. Brannan, Houston, for Appellant.

Kevin J. Schble, Neil G. Martin, Houston, for Appellee.

## OPINION ON MOTION
## FOR REHEARING

HEDGES, Justice.

A majority of the Court voted to grant appellant's motion for rehearing en banc. This Court's opinion issued on March 26, 1998 and the dissenting opinion from denial of en banc review issued on the same date are hereby withdrawn, and this opinion and dissenting opinion are substituted in their stead.

## EN BANC OPINION

Reba Daniel appeals from an order striking her pleadings and granting a take-nothing judgment in favor of appellees, David Kelley, individually (Kelley), and Kelley Oil Corporation. We affirm.

### FACTS

Daniel sued appellees alleging sexual harassment, discrimination, and retaliation. During discovery, Daniel revealed that she had an audio cassette tape recording of a conversation between her and Kelley. She refused to produce the recording, asserting that it was privileged and undiscoverable as attorney work product. Appellees filed a joint motion for sanctions and to quash admission of the taped conversations. After hearing evidence regarding the authenticity of the tape recording, the trial court found that Daniel had intentionally fabricated false evidence. The trial court struck her pleadings, assessed fees and costs against her, and ordered that she take nothing against appellees.

In three points of error, Daniel asserts that the trial court (1) abused its discretion in striking her pleadings and dismissing her

claims, (2) violated the standard set forth in *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913 (Tex.1991) (orig.proceeding) by imposing the so-called "death penalty" sanction, and (3) violated her due process rights by dismissing her claims.

## FACT FINDING AUTHORITY

■ We address the threshold issue whether the trial court had the authority to determine in the context of a discovery dispute sanctions hearing that the tape was fabricated. In point of error three, as part of her due process argument, Daniel argues that her "credibility should have been tested when her lawsuit was tried and not at the sanctions hearing."

■ We disagree. A trial court has both express and implied powers to manage controversies before it. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex.1979). Clearly the trial court has the express authority to arbitrate discovery disputes and mete out appropriate sanctions for wrongdoing under TEX.R. CIV. P. 215. Implied within this express grant of authority is the trial court's power to make the factual findings necessary to carry out its legislatively mandated prerogative. *Cf. Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim.App.1996) (former Tex.R.Crim. Evid. 702 places the trial judge in the role of a "gatekeeper" who must ensure that scientific testimony is not only relevant, but reliable); *Lawrence v. Kohl*, 853 S.W.2d 697, 700 (Tex.App.—Houston [1st Dist.] 1993, no writ) (court has inherent power to find that the conduct complained of significantly interfered with the court's legitimate exercise of one of the enumerated core functions, and sanction the offending party appropriately); *Tate v. Commodore Cnty. Mutual Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied) (a hearing on a motion for sanctions is "akin to a nonjury trial," placing the judge in the role of factfinder).

■ While ours is the first opinion that specifically states that a trial court has the authority to make a fact finding of fabrication

of evidence, other opinions have tacitly approved the procedure. At the sanctions hearing, the court is entitled to judge the credibility of the witnesses and the weight of their testimony. *See San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 66 (Tex.App.—San Antonio 1993, no writ); *City of Dallas v. Cox*, 793 S.W.2d 701, 724–25 (Tex.App.—Dallas 1990, no writ); *Vaughn v. Texas Employment Comm'n*, 792 S.W.2d 139, 142 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Daniel relies on *Lanfear v. Blackmon*, 827 S.W.2d 87, 91 (Tex.App.—Corpus Christi 1992, orig. proceeding), to support her contention that the trial court erroneously adjudicated the merits of the case based on testimony in a sanctions hearing. In *Lanfear*,the court advised against this practice, stating, "Otherwise, a trial court could at any time interrupt a trial proceeding if it believed a witness was being untruthful, and simply enter a default against the party procuring that witness for that reason." *Id.* at 91. We do not believe that *Lanfear*controls the issue before us. First, the court of appeals accepted the trial court's finding of untruthful testimony and "assume[d] as correct the factual conclusions found by the court below...." *Id.* at 90. Second, the perjurious statement did not go to the heart of the controversy, as it does here. *Id.* at 91. The trial court's order was overturned on the basis that the death penalty sanction was too severe, not that the trial court could not make its finding of fact or that the finding was so wrong as to be an abuse of discretion.[1]

The dissenting opinion distinguishes *Vaughn*, on the basis that in that case the perjury was admitted. We note that death penalty sanctions have been assessed when the perjury was denied. In*Cox*, that court stated:

> Although there was testimony explaining the absence of some of the requested records and the belated discovery of other records, the trial court, as judge of the credibility and weight of the witnesses' testimony, could well have believed the testimony indicating that furnished records

1. "The issue is whether the factual conclusions found by Judge Blackmon authorize the sanc-

tions imposed by him under the circumstances." 827 S.W.2d at 90.

were not genuine and missing records were improperly destroyed or withheld. Even if the trial court was inclined to give Dallas the benefit of the doubt, the testimony of the custodian of the furnished records suggested that Dallas's efforts to locate the records were less than diligent.

. . . .

There was testimony suggesting that the written directive was not applicable, but the trial court could have found that testimony unpersuasive.

793 S.W.2d at 724–25.

We believe that *Vaughn* was the rare case in which severe misconduct was admitted. In the common scenario, parties deny, explain, or minimize their misconduct under rule 215. The trial judge nonetheless retains his or her fact finding authority and the ability to rule. The judge may make the credibility choice and rule accordingly, including the granting of death penalty sanctions. *See Cox,* 793 S.W.2d at 724–25; *see also Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 847, 851 n. 13 (Tex.1992) (orig.proceeding) (vacating a sanction order, but recognizing the trial judge's function of resolving disputed fact issues at a sanctions hearing); *Andras v. Memorial Hosp. Sys.,* 888 S.W.2d 567, 570–71 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (where the trial judge had to decide whether to believe claims that discovery sought was proprietary and that party had produced all the requested discovery it had).

We overrule Daniel's contention in point of error three that the trial court did not have the authority to make a finding of fact that the tape was fabricated.

## FINDING OF FABRICATED EVIDENCE

■ In point of error one, Daniel complains that the trial court abused its discretion by striking her pleadings and dismissing her claims. Based on her argument, we interpret this point of error as an attack on the trial court's finding that the tape was fabricated.

At the hearing on appellees' motion to suppress, Daniel denied that the tape recording was fabricated or altered in any way. She asserted that the recording was made during one continuous time period, that she never changed the setting (it was on voice activated), and that she never touched the recorder until she turned it off. She contends that the tape contains the entire conversation between her and Kelley from the time she entered his office to the time she left, with no gaps, no omissions, and no instances where the tape did not record either her voice or Kelley's. She explained that stops in the tape might have occurred when neither she nor Kelley was talking because the recorder was in voice activation mode. Daniel stated that no one had suggested what she should say to Kelley. She denied ever having previously recorded his voice or directing anyone else to record his voice. She stated that she did not turn the recorder off until she met her lawyer immediately after making the recording. She denied editing or altering the tape. Daniel's attorney also denied that the tape had been altered or edited.

The court heard testimony from appellees' two experts. Dennis Lowe, whose company evaluates and tests the authenticity of tape recordings, testified that (1) the tape was edited, perhaps using multiple machines; (2) his analysis indicated layering not characteristic of the particular recorder used; and (3) the recording was not continuous or genuine. He based his opinion, in part, on gaps in the tape, variations in speed, and changes in time frames. Another expert, George Pacun, also stated that the tape was not a continuous recording of a conversation and that it had been altered. No one disputed that the recorder was functioning properly.

Daniel introduced an affidavit of her expert, Al Yonovitz.[2] He stated that the tape was a continuous recording made on Daniel's recorder and that there was no evidence of changes, alterations, or edits on the tape.

Kelley admitted to having two conversations with Daniel: one in mid-July at which the recording was allegedly made, and anoth-

2. The record also contains a copy of Yonovitz's deposition in which he states that there were no accidental or purposeful interruptions on the tape.

er several weeks before mid-July. Daniel's counsel referred Kelley to a portion of the transcript[3] of the tape recording:

Male: When did I slap you on the butt?

Female: Every time you walk by.

Male: I haven't slapped you on the butt today.

Female: No, but you haven't walked by me yet, so I—okay, deal.

Male: You turn around when you walk out of here, I'm going to pop you.

Female: You better not, because it took a lot for me to come here and talk to you.

Male: You feel nervous? And then [unintelligible].

. . . .

Male: The only reason I slapped your butt is because you've got a pretty butt.

Kelley admitted that the voice on the tape appeared to be his. He denied that the tape accurately reflected the conversation and stated that he could not recall what he said during the conversation. He stated that several weeks before the mid-July recorded conversation, "She [Daniel] came into my office, and she said, 'You are not paying as much attention to me as you did prior for (sic) the time that you found out that I was Jewish.'"

Kelley did not recall anything else having been discussed during that conversation, and he did not recall Daniel discussing his comments of a sexual nature. He did not remember the incident where he allegedly grabbed Daniel from behind and made a statement about throwing her into the gas chamber. Other than these two conversations, Kelley did not recall any other private conversation in his office, either about Daniel's religion or about any offensive overtures he had allegedly made.

We review findings of fact by the trial court on an abuse of discretion standard. Based on this record, we cannot say that the trial court abused its discretion in finding that the tape was manufactured.

We overrule point of error one.

3. In the transcript, the voices are identified only

## DEATH PENALTY SANCTIONS

In points of error two and three, Daniel complains that the court abused its discretion by striking her pleadings and dismissing her claims in violation of both *TransAmerican Natural Gas v. Powell* and her general due process rights.

When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits; instead, it focuses on the party's conduct of discovery. Sanctions that terminate or inhibit the presentation of the merits of a party's claims for decision are authorized by TEX.R. CIV. P. 215, and include exclusion of essential evidence, striking of pleadings, dismissal, and default. TEX.R. CIV. P. 215. The choice of sanctions under rule 215 is left to the sound discretion of the trial court. TEX.R. CIV. P. 215; *TransAmerican,* 811 S.W.2d at 917. We review the court's imposition of the so-called "death penalty" sanction under an abuse of discretion standard.

We review the entire record, including the evidence, arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse. *United States Fidelity & Guaranty Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied). We are not limited to a review of the "sufficiency of the evidence" to support the findings; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion in imposing the sanction. *Id.*

When the sanctions are so severe as to preclude presentation of the merits, that discretion is limited by the requirement that the sanctions be "just." TEX.R. CIV. P. 215(2)(b); *TransAmerican,* 811 S.W.2d at 917–18. Four factors determine whether the sanctions are just: (1) the sanction must bear a direct relationship to the offensive conduct; (2) the sanction must not be excessive; (3) the trial court must first impose a less stringent sanction; and (4) the trial court should not deny a trial on the merits, unless it finds

as M for male and F for female.

that the sanctioned party's conduct "justifies a presumption that its claims or defenses lack merit" and that "it would be unjust to permit the party to present the substance of that position [which is the subject of the withheld discovery] before the court." *Chrysler Corp.*, 841 S.W.2d at 849–50; *TransAmerican*, 811 S.W.2d at 918; *Andras*, 888 S.W.2d at 571. The record must reflect that the court considered the availability of less stringent sanctions. *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex.1993).

 Sanctions that by their severity prevent a decision on the merits of a case cannot be justified "absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *TransAmerican*, 811 S.W.2d at 918. Even then, lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender. *Id.*

 Once the trial court found that the tape was manufactured, it was obligated to impose "just" sanctions under *TransAmerican*. We examine the record in light of the four factors to determine whether the trial court abused its discretion in striking Daniel's pleadings and entering a take-nothing judgment against her.

1. *The sanction bears a direct relationship to the offensive conduct.*

The only use Daniel could make of the fabricated tape would be as evidence in the nature of a "confession" by Kelley. This evidence goes to the heart of her proof. Striking her pleadings bears a direct relationship to her fabrication of evidence.

2. *The sanction is not excessive.*

Given the nature of this offense, the deliberate and calculated spoliation of evidence, the sanction is not excessive.

3. *The trial court was not required to first impose a less stringent sanction because a less stringent sanction would not have been effective.*

Daniel argues that lesser sanctions, such as exclusion of the audio tape, were available

to the trial court. We disagree. Exclusion of the tape would have been ineffective as punishment. True, it would have deprived her of evidence authenticating her claim. But exclusion would merely have placed her in the same position she had been in before she manufactured the tape. And she was still left with her own testimony and two other confirming tape recorded conversations with third parties. Moreover, appellees might have wanted to introduce the tainted tape in order to impeach the very fabric of Daniel's veracity. The more punitive sanction of refusing to allow Daniel to testify would have had essentially the same consequence as the one about which she complains: she could not have established her case without her own testimony.

One of the purposes of discovery sanctions is to punish those who violate the rules of discovery. *McRae v. Guinn Flying Serv.*, 778 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1989, no writ). Fabricating evidence is a third degree felony. TEX. PENAL CODE ANN. § 37.09(a) (Vernon 1997). An act so destructive of the integrity of our judicial process, such as the fabrication of physical evidence, deserves serious punishment. Such intentionally egregious behavior warrants punishment that places the guilty party in a worse position than that from which she began.

4. *The trial court properly denied Daniel a trial on the merits because her conduct justifies a presumption that her claims have no merit, and it would be unjust to permit her to prosecute her causes of action under the circumstances.*

The very act of fabricating evidence strongly suggests that a party has no legitimate evidence to support her claims. Clearly, a presumption arises therefrom that her claims have no merit. Meritless claims impose a terrible hardship on opponents, and it is unjust to allow such claims to be presented.

We note that in a case whose facts are very similar to the record before us, this Court affirmed death penalty sanctions in a case in which evidence had been manufac-

tured. *Vaughn,* 792 S.W.2d at 143. We believe that *Vaughn* controls.

We overrule points of error two and three.

We affirm the judgment of the trial court.

COHEN, WILSON, TAFT, and NUCHIA, JJ., join the majority opinion.

SCHNEIDER, C.J., and O'CONNOR and ANDELL, JJ., join MIRABAL's, J., dissenting opinion.

MIRABAL, Justice, dissenting.

The majority opinion holds that death penalty sanctions (striking of plaintiff's pleadings and dismissing her claims with prejudice) are appropriate when a trial judge believes defense witnesses and concludes, after a hotly contested pretrial sanctions hearing, that the plaintiff has fabricated false evidence. I dissent.[1]

This case involves a swearing match. Plaintiff swore, and her expert witness swore, that the tape recording HAD NOT BEEN ALTERED in any way. They attributed the gaps in the tape to the fact that the recorder was on "auto mode." Defendant admitted his voice is on the tape, said he could not recall what he said during the conversation with plaintiff, but denied the tape accurately reflected the conversation. Defendant's two experts testified the tape HAD BEEN ALTERED. The trial court believed defendant and his experts. If the trial court or a jury instead believed plaintiff and her expert, we would hold the evidence supports that conclusion also.

This is not a case like *Vaughn,* relied on by the majority. *Vaughn v. Texas Employment Comn'n,* 792 S.W.2d 139 (Tex.App.—Houston [1st Dist.] 1990, no writ). The *Vaughn* opinion began with the important statement:

> The plaintiff-appellant does not challenge the trial court's findings that she committed perjury and fabricated evidence in her deposition and discovery responses, and that she committed perjury during the hearing on appellee's motion for sanctions.

*Id.* at 140. Contrary to *Vaughn,* plaintiff DOES challenge the claims of "misdeeds" by her.

I am very concerned by the prospect that a trial judge can mete out the death penalty of striking pleadings and entering a take-nothing judgment based on the trial judge believing one set of witnesses in a hotly contested matter. I agree with the following principle articulated by the Corpus Christi Court of Appeals:

> [A] trial court may not effectively adjudicate the merits of a case based on testimony of a party during a sanctions hearing because he was later impeached on testimony given at the hearing. The witness' credibility should be tested when the case is tried. Otherwise, a trial court could at any time interrupt a trial proceeding if it believed a witness was being untruthful, and simply enter a default against the party procuring that witness for that reason.

*Lanfear v. Blackmon,* 827 S.W.2d 87, 91 (Tex.App.—Corpus Christi 1992, orig. proceeding).

---

1. I note that the trial court's order striking plaintiff's pleadings and granting sanctions states, in part:

The Court finds that Plaintiff, Reba Rocket Daniel, has intentionally fabricated false evidence by way of an audio tape recording of an alleged conversation between Reba Rocket Daniel and David Kelley. The Court further finds that Plaintiff has repeatedly resisted proper discovery requests made by Defendants, has failed to obey the Court's June 1, 1995 Order with respect to the production of the subject audio tape, and has been held in contempt and sanctioned for her disobedience. Accordingly, the Court finds that Plaintiff has flagrantly and in bad faith violated the rules of discovery under the Texas Rules of Civil Procedure, specifically,

TEX.R. CIV. P. 215, and that such patterns of discovery abuse by Plaintiff can be remedied only by an order striking Plaintiff's pleadings in their entirety, the dismissal with prejudice of Plaintiff's action, entry of a judgment that Plaintiff take nothing against Defendants, and further sanctions.

I express no opinion about whether the trial court's order was proper based on the full record and the totality of the findings made by the trial court. The majority opinion does not address the "further findings" in the trial court's order; rather, the majority specifically holds that the first finding alone, that the plaintiff "has intentionally fabricated false evidence," justified the death penalty sanctions.

Again, what makes this case unique is that the plaintiff was not caught "red handed." She made no confession. She was adamant in her denial of wrongdoing. At the sanctions hearing she found it necessary to rely on her expert's affidavit and written deposition, while defendant presented two live expert witnesses; that must have hurt her case. The evidence is certainly legally and factually sufficient to support a finding that the tape was fabricated; however, the evidence is likewise legally and factually sufficient to support the opposite finding. Under such circumstances, death penalty sanctions should not be condoned.

SCHNEIDER, C.J., and O'CONNOR and ANDELL, JJ., join this dissenting opinion.

