DISSENTING OPINION



No. 04-00-00617-CV



Robert A. KUGLE; Robert L. Wilson, III; Andrew E. Toscano; Bridgett E. Fabila and Juan
Antonio Fabila, Jr., Individually and as Representatives of the Estate of Myriam Arlene Fabila,
deceased, and of the Estate of John Anthony Fabila, deceased; Juan Antonio Fabila, Sr. and Ana
Elva Fabila, Individually and as Next Friends of Guadalupe Fabila Hernandez, a minor, and

as Representatives of the Estate of Juani Margarita Fabila, deceased, and of the Estate of 

Sandra Lorena Fabila Hernandez, deceased,

Appellants



v.



DAIMLERCHRYSLER CORP. and North Star Dodge Sales, Inc.,


Appellees



From the 288th Judicial District Court, Bexar County, Texas


Trial Court No. 98-CI-07745


Honorable David Peeples, Judge Presiding



Opinion by: Karen Angelini, Justice

Dissenting opinion by: Catherine Stone, Justice, joined by Alma L. López, Justice


Sitting: Phil Hardberger, Chief Justice (not participating)

 Alma L. López, Justice

 Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: August 21, 2002 


 This case presents a sordid set of facts revealing attorney misconduct. As I wrote on original
submission of this case, the trial court properly imposed sanctions against the attorneys; accordingly,
on en banc submission I concur with the majority's rulings in all regards but the dismissal of the
Fabilas' suit. However, I respectfully dissent from that portion of the majority opinion which affirms
the dismissal of the underlying suit. 

 The trial court's dismissal of the underlying lawsuit appears to be based on its findings that
the Fabilas had knowledge of the results of the July 1998 investigation and Bridgett's allegedly
perjured testimony. However, there is no evidence in the record from which the trial court could
reasonably infer that the Fabilas had knowledge of the investigators' findings in July of 1998. Persing
testified that he was socially introduced to the Fabilas upon arriving at the salvage yard, but he did
not discuss his findings with them or even keep track of where they went after the introduction.
Kugle testified that he did not disclose the investigators' findings to the Fabilas, and the Fabilas were
only present at the salvage yard to identify the car for inspection. Bridgett testified that the Fabilas
arrived at the salvage yard separately from the attorneys and investigators and were not informed of
the investigators' findings. Therefore, I do not believe the evidence supports the imposition of
sanctions against the Fabilas based on the attorneys' fraudulent conduct regarding the July 1998
investigation. 

 The majority contends that the Fabilas appeared at the inspection "specifically for the purpose
of discovering if there was something wrong with the vehicle's steering mechanism." (slip opinion
at 16). Our record contains no evidence to support this contention. The only evidence is that the
Fabilas were present at the salvage yard for the purpose of identifying the vehicle involved in the
accident. Nor is there any evidence that the Fabilas were physically present by the vehicle as it was
inspected. Rather, the only evidence in the record is Persing's testimony that he was socially
introduced to the Fabilas "on the exterior of the salvage yard" and Bridgett's testimony that she was
"standing by the entrance of the junkyard." The majority concludes that the trial court could
reasonably infer that the plaintiffs were informed of the results of the investigation by their presence
at the salvage yard and the subsequent occurrence of a conversation with their attorneys. The
Fabilas' presence and the subsequent conversation, however, are merely circumstantial evidence.
"[W]hen circumstantial evidence is so slight that any plausible inference is purely a guess, it is in legal
effect no evidence," because "suspicion and conjecture are not evidence." Lozano v. Lozano, 52
S.W.3d 141, 148, 152 (Tex. 2001) (Phillips, C.J., concurring and dissenting). The trial court in this
case was not permitted to infer that the attorneys informed the Fabilas of the results of Persing's
investigation because the trial court is not permitted to guess about the subject of the conversation,
particularly in view of Kugle's testimony that the conversation revolved around the injuries to one
of the plaintiffs, not the test results.

 The only other basis for the "death penalty" sanctions assessed against the Fabilas was the trial
court's finding that the Fabilas pursued a lawsuit contending that the accident was caused by steering
failure despite Bridgett's prior statements regarding driver negligence. However, the inconsistency
in Bridgett's testimony does not support the "death penalty" sanctions assessed by the trial court.

 Although punishment and deterrence are legitimate purposes for sanctions, they do not justify
trial by sanctions. TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 918 (Tex. 1991).
When a trial court strikes a party's pleadings and dismisses its action for abuse of the discovery
process, the court adjudicates the party's claims without regard to their merits but based instead upon
the party's conduct of discovery. Id. Discovery sanctions should not be used to adjudicate the merits
of a claim or defense unless a party's obstruction of the discovery process justifies the presumption
that the claim or defense lacks merit. Id.

 A trial court may not effectively adjudicate the merits of a case based on testimony of a party
during a sanctions hearing because he was later impeached on testimony given at that hearing.
Lanfear v. Blackmon, 827 S.W.2d 87, 91 (Tex. App.--Corpus Christi 1992, orig. proceeding [leave
denied]). The witness' credibility should be tested when the case is tried. Id. Otherwise, a trial court
could at any time interrupt a trial proceeding if it believed a witness was being untruthful, and simply
enter a default against the party procuring that witness for that reason. Id. A "death penalty"
sanction is not proper punishment for what was perceived by the court to be perjured testimony. Id.
Although the trial court's conclusions of law recite that "lesser sanctions would be inappropriate,"
the record does not reflect that the trial court considered lesser sanctions or why lesser sanctions
would be ineffective. Id.; see also Fletcher v. Blair, 874 S.W.2d 83, 86 (Tex. App.--Austin 1994,
writ denied) (finding abuse of discretion where lesser sanctions not considered despite plaintiff's false
testimony).

 The consideration of lesser sanctions is particularly important in this case. Bridgett was only
one of the plaintiffs who filed the lawsuit. Although the court perceived Bridgett's inconsistency
regarding the events preceding the accident to be perjury, the testimony of the officers and the
ambulance driver Ramirez regarding the statement allegedly made by Bridgett was not without
question. See Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 761 (Tex.
App.--Fort Worth 1998, no pet.) (that a jury believes one party's account does not mean other
party's witnesses perjured themselves). Both Officer Morales and Ramirez stated that Bridgett was
calm despite her knowledge that her infant son was dead, her infant daughter was in grave condition,
and her belief that her husband was dead. Furthermore, Ramirez testified that Bridgett was calm
despite her knowledge that her infant daughter required cardiac resuscitation on three occasions
during the trip to the Eagle Pass hospital and the doctor's statement that her daughter was in grave
condition. The police report did not contain the statement Bridgett allegedly made to Officer
Morales, nor did it indicate on the pre-printed form that Juan's sleeping was a contributing cause to
the accident. Finally, Officer Villanueva testified that the statement was taken at the police station,
not the hospital, at a time when Bridgett could not have been at the police station. In view of these
circumstances raising questions with regard to the prior statement allegedly made by Bridgett, a
"death penalty" sanction against all of the plaintiffs is not proper punishment for what was perceived
by the court to be perjured testimony. Lanfear, 827 S.W.2d at 91.

 The majority relies heavily on Daniel v. Kelley Oil Corp. in seeking to uphold the "death
penalty" sanction. 981 S.W.2d 230 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). However,
in Daniel, expert testimony was presented that the plaintiff fabricated an audio cassette recording as
evidence of sexual harassment. 981 S.W.2d at 231. In this case, there is no fabricated evidence.
There is only a question as to whether Bridgett made the prior statement. Furthermore, the Fabilas'
newly-retained attorney argued at the sanctions hearing that one of the claims remaining in the case
was a claim relating to "crashworthiness." (1) In crashworthiness cases, the alleged defect need not be
the cause of the collision that precipitated the injury. General Motors Corp. v. Castaneda, 980
S.W.2d 777, 780 (Tex. App.--San Antonio 1998, pet. denied). Instead, the alleged defect need only
have enhanced the injury. Id. Accordingly, the jury apportions responsibility in crashworthiness cases
between all whose action or products combine to cause the entirety of the plaintiff's injuries. Id. at
780-81. Therefore, even if a jury were to believe that Juan fell asleep and the car rolled after Bridgett
turned the steering wheel, the jury could still find that some defect in the car enhanced the injuries
sustained by the victims of the accident. Because "death penalty" sanctions were inappropriate for
what the trial court perceived to be perjury by one of the plaintiffs and because the trial court did not
consider lesser sanctions, the trial court abused its discretion in dismissing the lawsuit. Accordingly,
I dissent from the majority's contrary ruling.


 Catherine Stone, Justice

PUBLISH

1. The Fabilas' attorney stated that the current pleadings can be read as permitting this theory of liability, and
since the defendants have been reimbursed for the attorneys' fees expended in the prior attorneys' pursuit of the failed
decoupler theory, the defendants are not prejudiced by the pursuit of the crashworthiness theory. The majority contends
that the pleadings contain no allegations that can be construed as a "crashworthiness" claim. On the contrary, the
pleadings contain the following allegation, "The malfunction and defective condition of the subject motor vehicle,
including its steering column system, was a producing cause of the Plaintiffs' injuries and damages, and the untimely
deaths of decedents for which the Defendants are responsible to the Plaintiffs under the doctrine of strict liability."
Therefore, the allegation of malfunction and defective condition is a broad allegation, and although the allegation
expressly includes the defective steering column, it is not limited to that defect. Finally, the majority's contention that
the Fabilas could not prove a crashworthiness claim in view of the existing discovery and designated experts is for the
trial court to decide at a summary judgment hearing, not for this court to decide on appeal.