# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00136-CV

**Jose Fernandez Galan Palau, Appellant**

**v.**

**Flor de Maria Navarro Sanchez, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-FM-06-002234, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent. This divorce action was a non-jury three-witness trial-by-sanction involving two Mexican natives and nationals with an "estate" of $6,580,145. The case-determining sanction suppressed proof and prevented Galan from showing by clear and convincing evidence that the bulk of the property in question was his separate property. *See* Tex. Fam. Code Ann. § 3.003 (West 2006). The discovery sanction prohibited Galan from offering evidence of any affirmative claim including evidence of his claim of separate property, which he asserted that he had inherited from his father and later from his mother. The "death penalty" sanction prevented Galan from cross-examining Navarro about her characterization of the property during her trial testimony, or to impeach her. In his trial testimony Galan was not permitted to explain how he had acquired the property involved.

Navarro's trial testimony that all the property was community property was meager, vague, or in answer to a leading question. The record shows that in her earlier unsuccessful Mexican divorce action her petition listed the bulk of the property as Galan's separate property, and she requested thirty percent of his separate property under Mexican law. Based upon the enforced sanction, Galan was prevented from offering evidence as to the merits of his separate property claims. The trial court here found all the property to be community property. The trial court awarded Navarro 62 ½ percent of the property and gave to Galan 37 ½ percent. The trial court ordered Galan to pay 62 ½ percent of Navarro's attorney's fees and to withdraw $550,000 out of one fund awarded to Galan to pay $214,000 towards the total fee.

A trial court has wide discretion to employ discovery sanctions to ensure compliance with the discovery rules, to deter would-be violators, and to punish violators. *Chrysler Corp. v. Blackmon*, 845 S.W.2d 844, 850 (Tex. 1992). Sanctions must be "just" under the circumstances. *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998); *Kulge v. Daimiber Chrysler Corp.*, 88 S.W.3d 355, 369 (Tex. App.—San Antonio 2007, pet. denied). We review the trial court's imposition of discovery sanctions for an abuse of discretion. *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991); *Kugle*, 88 S.W.3d at 364. In general, a trial court abuses its discretion when it acts without reference to any guiding rules or principles, i.e., when its acts arbitrarily or unreasonably. *Warford v. Stomper*, 801 S.W.2d 108, 109 (Tex. 1990); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In such a review, we look at the entire record. *See Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

In discovery sanction cases, it must be remembered that a trial court's discretion is limited by the requirements of rule 215 that the sanction be "just." Tex. R. Civ. P. 215.2(b). Independently, that discretion is also limited by constitutional due process. *Transamerican*, 811 S.W.2d at 918-19. An order imposing discovery sanctions may be reversed for an abuse of discretion, even if the findings and evidence support it. *Kugle*, 88 S.W.3d at 364.

Discovery sanctions imposed under rule 215.2(b)(2) must be "just" and are measured by two factors. *In re Ford Motor Co.*, 988 S.W.2d at 718. First, we consider whether there is a direct relationship between the offensive conduct and the sanction. *Transamerican*, 811 S.W.2d at 917. "This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id.* It also means that the trial court must attempt to determine if the offensive conduct is attributable to the party, the attorney, or to both. *Id.* A party should not be punished for his counsel's conduct where the party is not implicated apart from having instructed to counsel its legal representation. Second, a "just" sanction must not be excessive. *Id.* The punishment should fit the crime. *Id.* A sanction should be no more severe than necessary to satisfy its legitimate purpose. *Id.* Trial courts may consider lesser sanctions to promote compliance. These standards set the permissible bounds of rule 215 within which the trial court may exercise sound discretion. *Id.* When more severe or "death penalty" sanctions for discovery abuse are imposed, these standards as well as constitutional due process apply. *Id.* at 918.

The sanction here imposed on Galan violated the standards relating to rule 215 and constitutional due process when the sanction adjudicated Galan's claims to his separate property without regard for the merits of Galan's claims. In order not to elongate this dissent, I will focus on

3

the due process violation. The sanction should not and could not, in my opinion, have been used in this divorce case, for the trial court was without legal authority to do so.

Section 7.001 of the family code provides that a divorce decree "shall order the division of the estate of the parties in a manner that the court deems just and right." Tex. Fam. Code Ann. § 7.001 (West 2006). The "estate of the parties" has been construed to mean only the parties' community property. *See Cameron v. Cameron*, 641 S.W.2d 210, 213-14 (Tex. 1982); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977). Property is characterized as "separate" or "community" at the time of reception of title. *See Strong v. Garrett*, 224 S.W.2d 471, 474 (Tex. 1949); *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.). A spouse's separate property is statutorily defined in section 3.001 of the family code and includes *inter alia*, "the property acquired by the spouse during marriage by gift, demise, or decent." Tex. Fam. Code Ann. § 3.001(2) (West 2006); *see also* Tex. Const. art. 16, § 15. "Community property consists of the property, other than separate property acquired by either spouse during marriage." Tex. Fam. Code Ann. § 3.002 (West 2006). The degree of proof to establish that property is separate property is by clear and convincing evidence. *Id*. § 3.003(b). There is a rebuttable presumption that all property acquired during marriage is community property. *Id*. § 3.003.

In considering a division of the property by divorce decree, it is well settled as a constitutional matter that a Texas trial court may not divest a party of his or her separate property. *Cameron*, 641 S.W.2d at 220; *Eggemeyer*, 554 S.W.2d at 162; *Wilkerson*, 992 S.W.2d at 722. If the trial court is without authority to divest a spouse of his or her separate property, may a discovery

4

sanction be utilized to give the trial court the authority to prohibit a spouse from making proof of his or her separate property claim? May the trial court adjudicate the merits of the claim by sanction without a hearing or opportunity to supply the necessary proof? The trial court cannot do indirectly what it is forbidden to do directly. The trial court's action here failed to accord Galan due process and resulted in an unfair trial. The trial court, in my opinion, clearly abused its discretion.

I do not condone Galan's conduct, but some of the offensive conduct should have been attributable to Galan's trial counsel. The trial court made no attempt to determine if counsel was at fault. *See Transamerican*, 811 S.W.2d at 917.[1] Neither do I condone the actions of Navarro

---

[1] For example, on September 27, 2007, Judge Livingston ordered Galan to appear for a deposition on October 2, 2007, in the office of Navarro's attorneys and "carried" the case until then. Navarro's attorneys obtained a show cause order from another district judge why Galan should not be held in contempt for violation of other orders. The 80-year-old Galan, who was not in good health, traveled from San Luis Potosi in Mexico, to Austin, Texas, for the deposition. Galan and his attorney arrived at the law office of Navarro's attorney on October 2, 2007. Galan was immediately confronted by a process server who served Galan with the show cause order. This upset Galan. As the record shows, Galan's attorney advised Galan to take the Fifth Amendment to the United States Constitution. Galan did so generally and then left the law office. There is nothing to show that this Mexican citizen was a student of the United States Constitution. He simply followed his attorney's advice.

On November 5, 2007, when the case was before Judge Byrne for the first time, Galan's attorney agreed that he had advised his client as to what action to take on October 2, 2007. It was pointed out to counsel that the Fifth Amendment could not be applied and exercised in the manner he had recommended to Galan. He was not convinced but agreed it was his fault the advice was given. Judge Byrne, after the fact, explained to Galan personally how the Fifth Amendment might have been exercised during the deposition in answer to certain questions. Nevertheless, Judge Byrne imposed no sanction on counsel but imposed the ultimate sanction on Galan finding, under the circumstances, that Galan did not appear for the deposition at all.

The only basis for the sanction as orally announced from the bench on November 5, 2007, was Galan's failure to appear and answer questions at a deposition on October 2, 2007. Immediately after the oral pronouncement in open court, Judge Byrne added: "So now that takes the issue of separate property away."

and her attorneys. It is clear from the record that they used the discovery rules to harass the 80-year-old Galan. They knew that he lived in San Luis Potosi and had to constantly travel to meet all the pretrial hearings concerning taxes, mortgages, or support payments. It is obvious from the beginning they consistently urged the various trial courts hearing the case to sanction Galan and prevent him from being able to prove his claims to separate property. They obtained sanctions to prevent him from discovery, from using documents in support of his separate property claims, prohibiting him from calling expert witnesses concerning the Mexican-held property and Mexican law, preventing him from offering evidence about separate property, and finally, preventing him from offering evidence in support of any affirmative claim including his separate property claim. They knew that the sanctions requested would prevent proper proof of any separate property claim. Navarro testified that she married Galan in Mexico on October 23, 1950, under the regime of separate property. Further, in her 2003 Mexican divorce petition, she asked for thirty percent of Galan's separate property and listed in great detail and description each piece of property acquired by Galan, when acquired and from whom, bank accounts opened by Galan, and other information about other assets. Navarro had a vast knowledge of the property involved in this lawsuit. All this same property became "community property" by her trial testimony. The record shows that Navarro had separate property including investments in Asia, Europe, and the United States, had a financial advisor, and had traveled in Europe on her own money. This separate property was involved in the instant judgment.

---

On November 16, 2007, after trial, a written order was entered listing seven reasons for the severe ultimate sanction. No sanction was ever imposed on Galan's counsel.

6

I vigorously dissent to the affirmance of the instant judgment.  I would sustain appellant Galan's second point of error or issue (relabeled as third issue by the majority) that the trial court erred in imposing the death penalty sanction prohibiting Galan from presenting any evidence in support of any affirmative claim involving his claim to his separate property.[2]  The trial court abused its discretion in imposing a discovery sanction that adjudicated the merits of the case in violation of constitutional due process.

I would reverse the judgment and remand to the trial court for a fair and just trial.

_____

John F. Onion, Jr., Justice

Before Justices Puryear, Pemberton and Onion*

Filed:  November 10, 2010

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).

---

[2]  The majority opinion divides Galan's general argument into several categories but overlooks the particular argument upon which I rely.  In his brief, appellant Galan in his second issue argues that constitutional due process was violated by the imposition of the sanction imposed on November 5, 2007.  He cites *Response Time, Inc. v. Sterling*, 95 S.W.3d 656, 660 (Tex. App.—Dallas 2002, no pet.), and *Kurgle v. Daimber Chrysler Corp.*, 88 S.W.3d 355, 361-67 (Tex. App.—San Antonio 2002, pet. denied).  Galan added to his brief: "In the instant case, there is no question that the litigation revolves not around the issue of divorce, but the question of whether or not Navarro could possess herself of Galan's separate property.  The whole focus of Navarro's strategy was to prevent the case from being tried on the merits with regard to the issue of Galan's separate property."