# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00664-CV

**JNS Enterprise, Inc. and Leesboro Corporation, Appellants**

**v.**

**Dixie Demolition, LLC; Airways Recycling Group, LLC; Conrad C. Bar;**
**Velez Trucking, Inc.; and AAR Incorporated, Appellees**

**FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT**
**NO. 33,749, HONORABLE ED MAGRE, JUDGE PRESIDING**

## O P I N I O N

In this case arising from a salvage operation in Rockdale, Texas, appellants JNS Enterprise, Inc. and Leesboro Corporation appeal the district court's imposition of "death penalty" sanctions against them based on the district court's finding that they had fabricated documents at issue in the case. We will modify the district court's award of appellate fees, but affirm the remainder of the judgment.

## Background

JNS, which is in the business of buying and selling steel salvage, hired Airways Recycling Group, LLC, to help it locate salvage business opportunities in the United States. Airways identified just such an opportunity in connection with a defunct Alcoa power plant in Rockdale, Texas. Appellee Dixie Demolition, LLC owned the salvage rights in the Alcoa plant and was under contract with Alcoa to demolish the plant and abate all environmental liabilities at the site by a date certain. Dixie agreed to sell its salvage rights in the Alcoa plant to Airways for $10 million,

requiring $3 million up front and the remaining $7 million later. Airways, in turn, agreed to sell those same salvage rights to JNS for $11,275,000. JNS paid Airways $4,275,000 as a deposit and then sought to finance the remainder through its investors, including appellant Leesboro. Ultimately, however, JNS failed to pay Airways the remaining purchase amount and, as a result, Airways defaulted on its purchase agreement with Dixie. Dixie eventually terminated its contract with Airways and sold the salvage to other buyers, appellees Velez Trucking, Inc. and AAR Incorporated. Airways then terminated its contract with JNS.

After Dixie terminated its contract with Airways and removed JNS from the plant site, JNS investor Leesboro sued JNS, Dixie, Airways, and other defendants for various claims stemming from the breach of an alleged "performance guarantee" that Leesboro asserted was included, as a condition of its investment, in the two salvage contracts it alleged it had entered into with JNS regarding the Alcoa plant. The first contract between Leesboro and JNS, dated May 30, 2008, covered the sale of nonferrous salvage from the plant and the other contract, dated June 2, 2008, covered the sale of ferrous salvage from the plant. Both contracts included the following provision regarding an attached "promissory document":

> Seller (JNS) warrants Leesboro Corporation, based on the signed promissory document (Exhibit "A") dated May 29, 2008 by Claude Hendrickson, CEO of Dixie Demolition LLC, Conrad Bar, president of Airway Recycling Group LLC and Sonny Nguyen, CEO of JNS Enterprise, guaranteeing the performance of this contract with commencing operation date of June 1, 2008, completing approximately 3 months after the startup date, until all tonnage agreed on this contract."

The referenced "Exhibit A," which was purportedly attached to both contracts, guarantees that if JNS or Airways default on their contracts with Dixie, Leesboro has the right to purchase salvage material directly from Dixie:

2

May 29, 2008

Gentlemen,

This is [to] confirm that you have, or will be depositing funds totaling $2,500,000.00 for the purchase of scrap steel and copper from [JNS], which is being salvaged from the ALCOA Rockdale, Texas facility.  In the event that [JNS] and Airways default in their obligations regarding the procurement of the salvaged materials, and such default or defaults remain uncured after notice, and [JNS] is unable to perform on its sale of the material, you shall have the right to purchase 5000 tons of scrap steel for $2,000,000 and $500,000 of scrap copper at the then market value.  You shall be purchasing the first such material available at the project site.  The funds on deposit will be applied to the purchase.

DIXIE DEMOLITION, LLC, an Alabama limited liability company
By:     /s/ Claude Hendrickson, Manager

AIRWAYS RECYCLING GROUP, LLC, a Nevada limited liability company
By:     /s/ Conrad Bar, Manager

[JNS] ENTERPRISE, INC., a California corporation
By:     /s/ Sonny Nguyen, President

As indicated above, the performance guarantee purported to be signed by representatives of Dixie, Airways, and JNS, respectively.

Arguing in its original petition that it required this "performance guarantee" to invest with JNS and then relied on its terms when it paid JNS $3 million for salvage rights, Leesboro asserted claims for breach of the performance guarantee against Dixie, JNS, and Airways; fraud in the inducement and fraudulent concealment against Airways, Dixie, Hendrickson, and Bar; and constructive trust of the salvage materials from the Alcoa plant.

At some point during the first year of this litigation, JNS settled with Leesboro and then joined Leesboro as a plaintiff.  In JNS and Leesboro's petition against the remaining defendants, Leesboro asserted claims for breach of the performance guarantee, fraud, fraud in the inducement, fraudulent concealment, and interference with contract—again, all based on breach of

3

the alleged performance guarantee. JNS, in turn, asserted a claim against Airways for breach of its purchase agreement and claims against both Airways and Dixie for breach of the performance guarantee.

In response to discovery requests made during the course of litigation, Leesboro and JNS produced the May and June 2008 contracts, with their attached performance guarantee, and their corporate representatives testified in deposition about those contracts. And in response to further discovery requests, a district court order compelling production of certain documents, and a $12,000 sanction for not having done so previously, Leesboro produced its communications with JNS and all Leesboro computers used to create or edit the contracts and performance guarantee at issue in the case. A neutral third-party forensics examiner agreed upon by all the parties examined and retrieved data from these computers. Dixie then hired its own computer forensics expert to examine and analyze that data. Dixie's expert concluded that there was no evidence from the data to show that the contracts and performance guarantee "existed at the time they are dated." Additional discovery in the case revealed evidence supporting the expert's conclusion that the contracts and performance guarantee were created after the dates on which they were purportedly signed. For example, there was evidence showing that Leesboro representative Michael Lee was not in the United States when the June 3, 2008 JNS/Leesboro contract was purportedly signed in New Orleans, Louisiana—both of these contracts include a notarized acknowledgment that the contracts were signed in front of witnesses in New Orleans, Louisiana on May 31 and June 3, 2008 respectively. Further, email between Leesboro and JNS suggest that the parties were still negotiating the terms of their agreements after June 3, 2008. Finally, during deposition, Leesboro representative Michael Lee admitted that it was "a possibility" that the JNS/Leesboro contracts were created in August 2008 and then backdated to support Leesboro's claims.

Based on this information, Dixie filed a "Rule 215 Motion to Dismiss with Prejudice and for Monetary Sanction." Dixie's motion asserted that JNS and Leesboro "fraudulently fabricated evidence that goes to the heart of their claims against Dixie," and asked the district court to dismiss both Leesboro and JNS's claims with prejudice and award Dixie its attorney's fees. Essentially, Dixie asserted that JNS and Leesboro fabricated the two contracts in August 2008—i.e., after Airways defaulted on its agreement with Dixie and notified JNS that it was terminating its contract—and then backdated them to appear as if they had been created and signed in May and June 2008 respectively. Dixie also asserted in its motion that the performance guarantee was forged. In support of its assertions, Dixie attached the following evidence to its motion for sanctions:

- May 30, 2008 contract between JNS and Leesboro for the sale of nonferrous salvage from the Alcoa power plant, with attached performance guarantee dated May 29, 2008;

- June 2, 2008 contract between JNS and Leesboro for the sale of ferrous salvage from the Alcoa power plant, with attached performance guarantee dated May 29, 2008;

- Computer expert report that the JNS/Leesboro contracts were created after their purported May and June 2008 dates;

- Deposition testimony from Hendrickson, Dixie's corporate representative and the alleged signatory to the performance guarantee, that he did not sign the performance guarantee;

- Handwriting expert report concluding that signature on the performance guarantee was not made by Hendrickson;

- August 2008 email from JNS to Leesboro, which included attached and unexecuted "draft" contract, dated May 25, 2008, directing Sonny Nguyen to modify and "make it legally enforceable";

- Deposition testimony of Lee, Leesboro's representative, that contracts between JNS and Leesboro were signed and witnessed in New Orleans at his office or restaurant on the dates shown on the contracts;

- June 3, 2008 email from Lee to Nguyen, JNS's representative, stating that Lee is in the Bahamas;

- Deposition testimony of Sonny Nguyen stating that he signed both contracts on May 31, 2008 in Louisiana at Lee's office;

- Discovery requests and responses; and

- Billing statements from Dixie's lawyers.

Shortly after Dixie filed its motion for sanctions, co-defendants AAR and Velez filed a motion to join Dixie's motion for sanctions. Then, after Dixie set the matter for hearing, the attorney representing both JNS and Leesboro asked to withdraw from the case and sought a continuance of the sanctions hearing to allow JNS and Leesboro to find new counsel. The district court granted the continuance and rescheduled the hearing on a date chosen by and agreeable to both JNS and Leesboro.

One day before the rescheduled hearing, Leesboro filed an unverified motion for continuance signed by Leesboro representative Michael Lee as "pro se litigant." This "pro se" motion requested an additional 60 to 90 day continuance to allow Leesboro time to hire new counsel, explaining that since its prior counsel had recently withdrawn, that it had been unable to hire new counsel because of "the complexity of the case and the monetary damages at stake" and because of the "limited time to prepare for th[e] hearing." This motion also explained that volcanic ash in the atmosphere over Europe had delayed Lee's travel from Europe to Texas, which in turn had hindered his ability to hire new counsel. JNS did not file a request for a continuance. Dixie opposed Leesboro's continuance request, noting initially that a corporation cannot appear pro se and arguing that Leesboro had not diligently sought new counsel. Dixie also pointed out that Leesboro was represented by counsel in a related case in Harris County, Texas.

The next day, at the rescheduled hearing, the district court first considered Leesboro's request for a continuance before addressing the motion for sanctions. Neither JNS nor Leesboro

were represented by counsel at the hearing, but JNS president Sonny Nguyen and Leesboro representative Daniel Lee, who described himself as a fact witness and friend to Leesboro's president Michael Lee, both attended. After argument from Dixie's counsel on the continuance matter, Daniel Lee explained to the court that Michael Lee had been delayed in Europe, but would be there later that afternoon. He also asserted that Leesboro had been trying to find a lawyer, but had failed because of the complexity of the case and the damages at issue. Nguyen then addressed the court, explaining that he had not been able to hire a new attorney because his attorney had been recently allowed to withdraw. The district court then offered to receive any evidence regarding the continuance into the record, but only Dixie's counsel accepted. The district court then denied Leesboro's request for a continuance on the grounds that there had already been one continuance of the hearing, JNS and Leesboro had chosen the rescheduled hearing date, and JNS and Leesboro had failed to show good cause to grant the continuance.

The district court next considered the motion for sanctions. In addition to argument from Dixie's counsel, the court heard testimony regarding the reasonableness of Dixie's attorney's fees and offered both Daniel Lee and Nguyen the opportunity to cross-examine Dixie's counsel regarding those attorney's fees, which both declined. Also during this part of the hearing, Daniel Lee asked the court a question about the proceeding, which the court answered, and then Lee complained about the need for additional time to hire counsel. Ultimately, the district court decided to grant the motion for sanctions, ordering that JNS's and Leesboro's claims against Dixie, AAR, and Velez be dismissed with prejudice. At that point, Nguyen asked to speak to the court, explaining that he had some additional contracts that he wanted to offer, but that he had not brought them with him that day. The court overruled his request, noting that Nguyen had opportunity before the hearing to marshal his evidence. Daniel Lee then spoke up again to argue that the court should hear all the facts

7

in the case before deciding. The district court sustained Dixie's objection to Daniel Lee's argument, noting that it had already ruled on the matter.

The district court's written orders,[1] in addition to denying Leesboro's motion for continuance and dismissing JNS's and Leesboro's claims against Dixie, AAR, and Velez, awarded sanctions of $625,000 in attorney's fees to Dixie and $21,000 in attorney's fees to AAR and Velez. The court also awarded appellate attorney's fees to Dixie, AAR, and Velez. The district court's judgment included the following findings in support of its order:

a.  Leesboro and JNS, through their corporate representatives Yong Keuk Lee, Daniel Lee, and Son Kim Nguyen, have fabricated and submitted false evidence to this Court in an attempt to establish a basis for their lawsuit against [Dixie, AAR, and Velez].

b.  Leesboro and JNS drafted, backdated, and signed documents that purport to be contracts for salvage from a decommissioned power plant in Rockdale, Texas, owned by Dixie.

c.  Leesboro and JNS have committed fraud on this Court, an act so egregious that the only just punishment is dismissal of their entire case, with prejudice, and an assessment of monetary sanctions against them.

d.  Leesboro's and JNS's fabrication of evidence goes to the heart of their claims against [Dixie, AAR, and Velez].

e.  Leesboro's and JNS's misconduct also supports the inference that their claims are without merit.

f.  There is a direct relationship between the sanctions and the offensive conduct.

g.  These sanctions are not excessive. Leesboro's and JNS's actions are so reprehensible that justice requires that they be placed in a worse position than before they initiated their suit against [Dixie, AAR, and Velez].

---

[1] The district court issued two orders in connection with the sanctions motion: one addressing the claims against Dixie and the other addressing the claims against AAR and Velez.

8

h.      This court considered lesser sanctions and has determined that lesser sanctions would be inappropriate. Lesser sanctions are inappropriate given the egregiousness of Leesboro's and JNS's conduct. Lesser sanctions would fail to adequately punish Leesboro and JNS for their actions, in light of the fact that justice requires that they be placed in a worse position than before they filed their suit. Lesser sanctions would also fail to adequately deter those who might be similarly tempted to fabricate false evidence and tip the scales of justice in their favor.

i.      Dismissing JNS's and Leesboro's claims and assessing monetary sanctions against them will appropriately deter other potential litigants who might be tempted to fabricate and submit false evidence to this Court.

j.      Leesboro's and JNS's misconduct justifies dismissing their claims with prejudice and taxing them with Dixie's attorney's costs and fees in the amount of $625,000 [and with AAR and Velez's attorney's costs and fees in the amount of $21,000].

On motion from the parties, the district court later severed JNS's and Leesboro's claims against Dixie, AAR, and Velez from the other defendants and then entered a final judgment that incorporated its written sanctions order. It is from this final judgment that JNS and Leesboro appeal.

**Discussion**

JNS challenges the district court's judgment in six issues: (1) the sanctions provisions of Texas Rule of Civil Procedure 215 do not apply to the facts of this case; (2) the death-penalty sanctions imposed on JNS were excessive; (3) the death-penalty sanctions imposed on JNS were not just; (4) the district court violated JNS's due-process rights; (5) the monetary sanctions imposed against JNS are unsupported; and (6) the award of appellate attorney's fees was improper. Leesboro also challenges the district court's judgment in six issues: (1) the district court violated Leesboro's due-process rights; (2) Dixie's expert-witness evidence lacked an adequate foundation; (3) the district court erred by holding the dismissal hearing without an interpreter for Nguyen and by refusing to allow Nguyen and Daniel Lee to testify; (4) it was improper for the district court to

9

resolve a factual dispute at a rule-215 hearing; (5) the district court should have tried lesser penalties before imposing death-penalty sanctions; and (6) the death-penalty sanction was too severe. Because appellants' issues generally overlap, we will discuss them together where appropriate.

**Is rule 215 applicable?**

In its first issue, JNS asserts that the district court erred in ordering sanctions under rule 215 because that rule requires the existence of an underlying discovery dispute that was not present in this case. *See* Tex. R. Civ. P. 215 (titled "Abuse of Discovery; Sanctions"). Claiming that the district court granted death-penalty sanctions solely under rule 215, JNS argues that fabricating or falsifying evidence is not discovery-related conduct that rule 215 prohibits. *See id.* 215.1–.5 (addressing failure to appear for a deposition, failure to respond to proper discovery requests, failure to obey a discovery order, abuse of the discovery process in seeking, making, or resisting discovery). Therefore, JNS argues, because neither it nor Leesboro engaged in any of the discovery-related conduct prohibited by rule 215, the district court had no authority to impose discovery sanctions under rule 215. We disagree.

Initially, we address Dixie's premise that the district court's order here was necessarily granted solely under rule 215. The order imposing death-penalty sanctions does not specify under what authority the district court granted Dixie's motion and Dixie's motion, although principally seeking sanctions under rule 215, also asked for relief under the district court's "inherent power to impose sanctions for a party's deplorable conduct." *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (recognizing courts' inherent power to sanction in affirming trial court's sua sponte sanction of attorneys for misconduct). Further, even if Dixie had not invoked this inherent authority to sanction, the district court could have done so on its own motion. *See Id.* ("A court has the

10

inherent power to impose sanctions on its own motion in an appropriate case."); *Lawrence v. Kohl*, 853 S.W.2d 697, 700 (Tex. App.—Houston [1st Dist.]1993, no writ) (cited by *In re Bennett*, 960 S.W.2d at 40, for holding that trial courts have the power to sanction parties for bad faith abuse of the judicial process not covered by rule or statute).

But regardless of a court's inherent authority to sanction, rule 215 was properly invoked here. Rule 215.3 authorizes a trial court to impose a variety of sanctions "if the court finds a party is abusing the discovery process in seeking, making or resisting discovery." Tex. R. Civ. P. 215.3. Here, the district court specifically found that JNS and Leesboro fabricated the contracts and performance guarantee.[2] The record shows that JNS and Leesboro produced these document in response to discovery requests and that their corporate representatives testified in deposition about the fabricated documents. In fact, in that deposition testimony, JNS's and Leesboro's representatives lied about, among other things, the origin and chronology of the fabricated contracts and performance guarantee. Producing false documents in discovery and then lying about those documents in deposition undoubtedly qualifies as an abuse—flagrant, in fact—of the discovery process, whose ultimate goal is, after all, a search for the truth. *See Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (noting that "the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed"); *see also First Nat'l Bank of Louisville v. Lustig*, 96 F.2d 1554, 1573 (5th Cir. 1996) (characterizing fabrication of evidence as "the most egregious conduct" and as "fraud on the court"). Accordingly, rule 215 was properly invoked.

---

[2] When findings of fact are filed and are unchallenged, as here, they are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

JNS also suggests that it was improper for the district court to sanction JNS and Leesboro under rule 215 in the absence of prior motions to compel or prior orders sanctioning JNS's or Leesboro's conduct in the case. We disagree. While it may be true that death-penalty sanctions cases in Texas *usually* involve discovery orders under rule 215, the absence of such orders does not necessarily preclude the imposition of death-penalty sanctions where, as here, the objectionable discovery conduct is fabricating evidence and lying about that evidence in deposition. In most discovery disputes, the objectionable conduct is something that can be corrected using a court order—e.g., ordering a party to appear for a deposition, to respond to written discovery, or to produce certain documents. But when a party fabricates evidence and lies about that evidence in deposition, these typical discovery orders would be ineffective in addressing or punishing the objectionable discovery conduct. Courts cannot effectively order someone to take back fabricating the evidence or lying in deposition; nor would it make sense to compel a party to refrain from fabricating evidence or lying in the future when that type of conduct is already prohibited. Likewise, simply excluding the fabricated evidence would be no punishment and, in fact, would fail to address the inherent problem. Accordingly, when the objectionable discovery conduct is fabricating evidence and lying about it in deposition, it is both logical and reasonable that there were no underlying discovery orders. We are not inclined to hold that, as a matter of law, there must be underlying orders that gradually lead up to the death-penalty sanction. *See Kugle v. Daimler Chrysler Corp.*, 88 S.W.3d 355, 360–61 (Tex. App.—San Antonio 2002, pet. denied) (affirming death-penalty sanctions for evidence tampering without prior discovery orders).

JNS also questions whether fabricating evidence is a proper subject for rule 215, noting our decision in *Fletcher v. Blair*, 874 S.W.2d 83 (Tex. App.—Austin 1994, writ denied). In *Fletcher*, we recognized as an open question whether it was appropriate to use discovery sanctions

12

to punish a litigant for making false statements, but then assumed without deciding that it was. *See id.* at 86 n.4 (explaining that whether "it was appropriate to use discovery sanctions to punish a litigant for false statements (as distinguished from the more common varieties of discovery abuse)," we would "assume without deciding that [the appellant]'s conduct was a proper subject for Rule-215 sanctions"). But given that *Fletcher* does not directly address this issue or consider a court's inherent power to sanction litigants, it provides minimal guidance here. On the other hand, our sister courts who have addressed this issue, while not always approving the punishment meted out by the trial court, have not questioned the use of rule 215 to punish a litigant for fabricating evidence. *See, e.g.*, *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 148–47 (Tex. App.—Dallas 2011, no pet.) (recognizing court's ability to sanction under rule 215 and inherent powers); *Response Time, Inc. v. Sterling Commerce (North Am.), Inc.*, 95 S.W.3d 656, 661–62 (Tex. App.—Dallas 2002, no pet.) (recognizing use of rule 215 to sanction party for fabrication of evidence); *Kugle*, 88 S.W.3d at 361 (recognizing use of rule 215 to sanction evidence tampering); *Vaughn v. Texas Emp't Comm'n*, 792 S.W.2d 139, 144 (Tex. App.—Houston [1st Dist.] 1990, no writ) (holding that false discovery responses were sanctionable because they offended the discovery process). We likewise do not reject, under these circumstances, the district court's use of rule 215 to punish JNS and Leesboro.

In a related argument, Leesboro asserts as its fourth issue on appeal that it was error for the district court here to determine fact questions at a rule-215 sanctions hearing. Similarly, JNS argues that rule 215 "applies to discovery disputes and discovery disputes only" and should not be used as a remedy for fabrication of evidence. Specifically, JNS contends that district courts should not use rule 215 to determine the validity of evidence or the truthfulness of witnesses; rather, that should be done during the trial through cross-examination or, in more extreme circumstances,

13

through perjury proceedings. We disagree with both these arguments. A trial court has both express and implied powers to manage controversies before it. *See Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 232 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (citing *Eichelberger*, 582 S.W.2d at 398–99). Clearly a trial court has the express authority to arbitrate discovery disputes and impose appropriate sanctions for wrongdoing under rule 215. And implied within this express grant of authority is the trial court's power to make the factual findings necessary to carry out its legislatively mandated prerogative. *See American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584–85 (Tex. 2006) (reviewing record to determine if evidence supported trial court's finding that attorney committed the sanctionable conduct); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex. 1992) (trial court is not required to make findings of fact supporting its imposition of sanctions, but those findings might be helpful); *Daniel*, 981 S.W.2d at 232; *Tate v. Commodore Cnty. Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied) (noting that hearing on motion for sanctions is "akin to a nonjury trial," placing the judge in the role of fact finder). For example, a trial court in a sanctions hearing is entitled to judge the credibility of the witnesses and the weight of their testimony. *See San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 66 (Tex. App.—San Antonio 1993, no writ). Further, the trial court in a sanctions hearing must determine from evidence whether the offensive conduct is attributable to the party, the party's attorney, or both because sanctions may only be imposed on the responsible party. *See American Flood Research*, 192 S.W.3d at 584. Accordingly, a trial court necessarily has the authority in a sanctions hearing to make a finding of fabrication of evidence. *See Daniel*, 981 S.W.2d at 232 (citing *San Antonio Press*, 852 S.W.2d at 66).

We overrule JNS's first and Leesboro's fourth issues on appeal.

14

**Were death-penalty sanctions appropriate?**

JNS, in its second and third issues, and Leesboro, in its fifth and sixth issues, argue that the death-penalty sanctions imposed against it and Leesboro were excessive and not just under the circumstances. We disagree.

We review a trial court's imposition of sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The ruling will be reversed only if the trial court acted "without reference to any guiding rules and principles," such that its ruling was arbitrary or unreasonable. *Id.* at 839. In determining whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Imposition of sanctions is appropriate (1) if there is a direct relationship between the improper conduct and the sanctions imposed—i.e., the sanctions must be directed against the abuse and abuser and be tailored to remedy any prejudice the abuse caused—and (2) if the sanctions are not excessive—i.e., the punishment should fit the crime. *Id*. The imposition of severe sanctions—such as the death-penalty sanctions here—is also limited by constitutional due-process concerns because it adjudicates the merits of a party's claims or defenses. As such, severe sanctions are not appropriate unless the offensive conduct justifies a presumption that the party's claims or defenses lack merit. *Id.* (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705–06 (1982)).

Here, the evidence showed and the district court found that both JNS and Leesboro had committed fraud on the court by fabricating and submitting back-dated contracts and the performance guarantee to establish a basis for their lawsuits against Dixie, AAR, and Velez. JNS's and Leesboro's representatives also gave false deposition testimony about when these documents

15

were created and signed.[3]  If these documents and the accompanying testimony had been authentic, they would legally determine the contractual relationship between the parties to the underlying litigation, very likely in JNS's and Leesboro's favor.  Stated another way, these fabricated documents would have been the principal evidence that Leesboro and JNS needed to succeed in most of their claims against Dixie, AAR, and Velez.  As such, they were the heart of Leesboro's and JNS's claims.  Accordingly, the punishment dismissing JNS's and Leesboro's claims was directly related to the offensive conduct of fabricating the evidence critical to those claims.  And given the district court's finding that both JNS and Leesboro participated in the scheme, the punishment was properly directed at the perpetrators of the offensive conduct.  For related reasons and given the egregiousness of the offense, the death-penalty sanction was not excessive.  *See Daniel*, 981 S.W.2d at 235.

Further, although the district court properly explained in its order that it had considered lesser sanctions against JNS and Leesboro, it was not necessary under the circumstances here for the district court to first employ lesser sanctions against JNS and Leesboro.  *See Cire*, 134 S.W.3d at 842 (requiring trial court to test lesser sanctions in all *except* the most egregious and exceptional cases).  JNS and Leesboro fabricated the contracts and performance guarantee that formed the basis of their claims.  This was certainly an egregious act and an exceptional case.  *See id*.; *Lustig*, 96 F.2d at 1573 (characterizing fabrication of evidence as "the most egregious conduct").  Further, lesser sanctions would not have effectively punished this wrongdoing, nor would they have redressed the harm to Dixie, AAR, and Velez.  For example, simply excluding the fabricated evidence would have been ineffective because, although it would have deprived JNS and Leesboro of critical evidence, it would have merely placed them both in the same position they were

---

[3]  Again, when findings of fact are filed and are unchallenged, as here, they are binding on an appellate court.  *See McGalliard*, 722 S.W.2d at 696.

16

in before having manufactured the contracts and performance guarantee. *See Daniel*, 981 S.W.2d at 235. To constitute punishment, the wrongdoer must be placed in a worse position. *Id*. Finally, it was also appropriate to impose death-penalty sanctions here because JNS's and Leesboro's acts in fabricating these documents strongly suggest that neither had legitimate evidence to support their claims. *See id.* ("The very act of fabricating evidence strongly suggests that a party has no legitimate evidence to support [its] claims."). "Meritless claims impose a terrible hardship on opponents, and it is unjust to allow such claims to be presented." *Id.* Although we recognize that the supreme court strongly prefers that trial courts consider the availability of lesser sanctions before imposing death-penalty sanctions, they do not require it where, as here, the offensive conduct is egregious and where it is apparent that no lesser sanctions would promote compliance with the rules. *See Cire*, 134 S.W.3d at 840 (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729–30 (Tex. 1993)).

We overrule JNS's second and third issues, and Leesboro's fifth and sixth issues.

**Due process**

JNS asserts as its fourth issue that the district court violated JNS's due-process rights by imposing death-penalty sanctions that denied JNS a hearing on the merits of its claims; by denying JNS's second motion for a continuance of the sanctions hearing; and by not allowing JNS's corporate representative, Sonny Nguyen, to speak at the sanctions hearing. Relatedly, Leesboro asserts as its first issue that the district court violated its due-process rights by denying Leesboro's second motion to continue. We disagree with each of these contentions.

As we noted above, the imposition of severe sanctions—such as the death-penalty sanctions here—is limited by constitutional due-process concerns because it adjudicates the merits

17

of a party's claims or defenses. As such, severe sanctions are not appropriate unless the offensive conduct justifies a presumption that the party's claims or defenses lack merit. *See Transamerican*, 811 S.W.2d at 918. Here, the offensive conduct—i.e., fabricating the evidence necessary to support its claims—trumpets that JNS's and Leesboro's claims lack merit. *See Daniel*, 981 S.W.2d at 235 ("The very act of fabricating evidence strongly suggests that a party has no legitimate evidence to support her claims."). Fabricating evidence is, in fact, one of the most egregious offenses against the integrity of the judicial system. *See Lustig*, 96 F.2d at 1573 (characterizing fabrication of evidence as "the most egregious conduct" and as "fraud on the court"). Accordingly, we hold that severe sanctions were appropriate here and did not run afoul of due-process protections.

JNS and Leesboro also challenge on due-process grounds the district court's decision to deny Leesboro's second motion for continuance of the sanctions hearing. Specifically, they argue that the district court abused its discretion when it refused to grant a continuance to allow them additional time to hire new counsel despite the fact that the district court had allowed counsel to withdraw less than 30 days before that hearing. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (applying abuse-of-discretion standard to trial court's decision to deny motion for continuance). We disagree.

First, it is relevant to note that JNS and Leesboro are challenging the district court's decision to deny Leesboro's *second* motion for a continuance, which Leesboro filed the day before the sanctions hearing on the grounds that it needed more time to find replacement counsel (JNS did not file a second motion for continuance). The district court had previously granted the first motion for a continuance, also based on the need to find replacement counsel, and reset the sanctions hearing on a date agreed to and chosen by JNS and Leesboro. Further, the second motion for continuance, which was filed by Leesboro's corporate representative who was not a lawyer, did

18

not include an affidavit as required by rule 251, *see* Tex. R. Civ. P. 251 (requiring motion for continuance be supported by affidavit), and did not show that the failure to be represented by counsel was not due to its own fault or negligence, *see State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984) (holding that motion for continuance based on absence of counsel must show that the failure to be represented by counsel was not due to their own fault or negligence). In fact, at the sanctions hearing, Dixie's counsel introduced evidence that Leesboro had not discussed this case with the attorney representing it in related litigation in Harris County. Thus, even assuming that Leesboro's "pro se" motion was a valid motion for continuance, *see Kunstoplast of Am. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex. 1996) (holding that only licensed attorney can appear and represent a corporation in litigation), and assuming that JNS somehow preserved this issue despite having not asked for a second continuance, *see* Tex. R. App. P. 33.1, the second continuance motion arguably failed to show good cause for a continuance, and the evidence in the record showed that the need for the continuance was due to the movants' fault or negligence. Accordingly, we cannot say that the district court's decision here was arbitrary and unreasonable. *See Joe*, 145 S.W.3d at 161 (noting that trial court abuses its discretion "when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law").

JNS and Leesboro also argue that the district court violated their due-process rights by not allowing their corporate representative to speak and testify at the sanctions hearing. The record itself belies this argument. At the outset of the sanctions hearing, the district court recognized both Nguyen and Daniel Lee and asked them to identify themselves for the record. The district court also allowed Daniel Lee, who is not an attorney, to explain why Leesboro had not yet hired new counsel. Further, near the end of Daniel's Lee's explanation, the district court interrupted—

19

Well, the—if you want to put anything on, Counsel, I'll listen to it. But since this was an agree—the previous continuance, this setting was agreed to, and I've seen no evidence to lead me to grant the continuance. But if, for the record, you want to put any evidence on, I'll be glad to listen to it.

Although the district court used the word "counsel" here, it is clear from the context of the reporter's record that the court was inviting anyone in the room to offer evidence "to lead [the court] to grant the continuance." Regardless, Daniel Lee was able to address the court on more than one occasion and when he did so, neither the district court nor opposing counsel stopped him from doing so. Likewise, Nguyen was able to address the court without objection. And after Dixie presented its witnesses at the hearing, the court offered Daniel Lee and Nguyen the opportunity to cross-examine those witness, but they both declined. Moreover, Dixie's counsel told the court that it did not object to Lee or Nguyen cross-examining those witnesses. The only time the court "restricted" Lee's or Nguyen's ability to address the court was when it sustained Dixie's objection to efforts to address matters that the court had already ruled on.

Relatedly, Leesboro argues in its third issue that the district court should have provided a translator for Nguyen and Daniel Lee at the sanctions hearing. But there is nothing in the record to show that either of these two men or any party requested a translator. The Government Code, while allowing a court to appoint an interpreter on its own motion if it so chooses, does not require a trial court to appoint an interpreter in a civil proceeding in the absence of a request by a party or witness. *See* Tex. Gov't Code § 57.002 (a)–(b); *Alexander Shren-Yee Cheng v. Zhaoya Wang*, 315 S.W.3d 668, 671–72 (Tex. App.—Dallas 2010, no pet.) (holding that trial court is permitted, but not required, to appoint an interpreter in civil cases where neither party nor witness requests one). Here, the record shows that both responded appropriately to questions asked by the judge and seemed to understand the proceedings. Also, Nguyen testified extensively in a deposition

20

in this matter without the need for a translator. Accordingly, we cannot say that the district court abused its discretion by failing to sua sponte appoint an interpreter. *See Cheng*, 315 S.W.3d at 672.

We overrule JNS's fourth issue and Leesboro's first and third issues.

**Evidentiary concerns**

In its second issue on appeal, Leesboro challenges the evidence Dixie submitted in support of its motion for sanctions. Specifically, Leesboro questions the foundation and reliability of the expert affidavit regarding the computer analysis. But a party must object to evidence before trial or when the evidence is offered to preserve a complaint that expert testimony is unreliable. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 823 (Tex. 2009); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998) (citing *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995)). Nothing in this record indicates that any party objected to Dixie's evidence. Accordingly, Leesboro waived this argument, and we overrule its second issue.

**Monetary sanctions**

In its fifth issue on appeal, JNS challenges the district court's award of monetary sanctions against JNS—i.e., $625,000 for Dixie's attorney's fees and $21,000 for appellees AAR and Velez's attorney's fees—arguing specifically that it was improper for the district court to make JNS jointly and severally liable with Leesboro for all of the monetary sanctions because JNS had no claims against AAR and Velez. In support of its assertion here, JNS emphasizes the supreme court's decision in *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986), which reversed a trial court's order making its discovery sanctions against two parties jointly and severally liable. In *Bodnow*, the trial court sanctioned two plaintiffs for separate discovery abuses by making them jointly and severally liable for all discovery expenses incurred by the defendants as a result of

21

the abuses. *See id.* The supreme court held that because certain of the discovery expenses incurred had been caused by one party's misconduct, it was an abuse of discretion for the trial court to have made the other party jointly and severally liable for those same expenses. *See id.* ("Making a party liable for discovery expenses that are caused by another party's misconduct does not further any of the purposes that discovery sanctions were intended to further."). Here, however, the district court found *both* JNS and Leesboro complicit in the scheme to fabricate the contracts and performance guarantee and awarded Dixie and the other defendants their attorney's fees. Stated another way, the district court sanctioned JNS's and Leesboro's *joint* conduct. Accordingly, it was not an abuse of discretion for the district court to make JNS and Leesboro jointly and severally responsible for those fees.

JNS also argues that Dixie should have been required to segregate its attorney's fees between each plaintiff's conduct and each claim it was defending just as a prevailing party must segregate its attorney's fees between certain claims. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) ("[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees."). But the attorney's fees awarded here were awarded as sanctions, not for prevailing on a successful claim for which attorney's fees are recoverable. As such, the general rules for recovery of an award of attorney's fees do not apply. *See Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 816–17 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("When attorney's fees are assessed as sanctions, no proof of necessity or reasonableness is required.").

We overrule JNS's fifth issue on appeal.

**Appellate fees**

In its sixth and final issue, JNS challenges the district court's award of appellate fees to Dixie, AAR, and Velez. JNS argues that the appellate fees awarded to Dixie were improper because there is no evidence in the record to support an award of appellate attorney's fees and because the actual award of attorney's fees in the final judgment is impermissibly vague:

> If Leesboro Corporation or JNS Enterprise, Inc. unsuccessfully appeal this Judgment or the May 6 Order to the Third Court of Appeals or to the Texas Supreme Court, the unsuccessfully appealing party shall pay Dixie's . . . reasonable and necessary attorneys' fees.

JNS argues that the appellate fees awarded to AAR and Velez were improper because certain of the fees were not predicated on a successful appeal to the supreme court:

> AAR Incorporated and Velez Trucking, Inc. [are awarded] attorney fees in the amount of $20,000 in the event of an appeal to the Court of Civil Appeals [sic] in which AAR Incorporated and Velez Trucking, Inc. are successful and the further sum of $7,500.00 if application for writ of error [sic] is made to the Supreme Court.

We agree in part. Regarding the appellate fees awarded to Dixie, we find no evidence in the record to support those fees. Further, Dixie has indicated in its briefing to this Court that it no longer seeks its appellate fees in this matter. Accordingly, we sustain JNS's sixth issue on appeal and reverse that part of the district court's judgment awarding Dixie appellate fees in this matter.

Regarding the appellate fees awarded to AAR and Velez, while we agree that it is improper to award appellate attorney's fees that are not conditioned on a successful appeal, the district court's order here arguably conditions the award on the outcome of the appeal. *See In re Ford Motor Corp.*, 988 S.W.2d 714, 721 (Tex. 1998) ("[A]lthough a trial court may grant appellate attorney's fees as part of a sanctions order under Rule 215, the court must condition the award on

23

the outcome of the appeal."). Nevertheless, to make the matter clear, we will reform that part of the district court's judgment to condition the award of supreme court appellate attorney's fees on a successful appeal. We sustain JNS's sixth issue on appeal.

## CONCLUSION

Having sustained JNS's sixth issue on appeal, we reverse that part of the district court's judgment awarding appellate attorney's fees, render judgment that Dixie recover no appellate attorney's fees, and modify that part of the district court's judgment awarding supreme court appellate fees to AAR and Velez to condition the award of those fees on a successful appeal to the Texas Supreme Court. Having overruled the remaining issues on appeal, we affirm the district court's judgment as modified.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Modified and, as Modified, Affirmed in part; Reversed and Rendered in part

Filed: July 17, 2013